**HAYS COUNTY APPRAISAL DISTRICT
and Hays County Appraisal Review
Board, Appellants,**

v.

**J. Malcolm ROBINSON, et
ux., Appellees.**

**No. 3–90–124–CV.**

Court of Appeals of Texas,
Austin.

May 8, 1991.

Lee Vickers, Overstreet, Winn & Edwards, P.C., Austin, for appellants.

J. Malcolm Robinson, Austin, pro se.

Before POWERS, ABOUSSIE and KIDD, JJ.

KIDD, Justice.

This is an ad valorem tax case. J. Malcolm and Rebecca Robinson ("the Robinsons") applied for an open-space valuation on approximately thirty-five acres of land they owned in Hays County. The Hays County Appraisal District denied the open-space valuation. The Hays County Appraisal Review Board[1] affirmed the Appraisal District's ruling. The Robinsons appealed to the district court, which, after a bench trial de novo, reversed the Board and granted the Robinsons an open-space

---

1. Hereinafter, except as otherwise noted, the Hays County Appraisal District and the Hays County Appraisal Review Board will be referred to collectively as "the Board."

valuation. The Board appeals, alleging that the trial court erred in granting the Robinsons an open-space valuation. We will affirm the judgment of the trial court.

## THE CONTROVERSY

The Robinsons purchased a thirty-five acre tract of property ("the property") located in rural Hays County in November of 1987. The Robinsons applied for an open-space valuation of the property for the 1989 tax year pursuant to Tex. Const. Ann. Art. VIII, § 1–d–1 (Supp.1991), which allows property used for farm or ranch purposes to be valued based upon the property's productive capacity rather than its market value. In order to obtain the open-space valuation, the Robinsons had to demonstrate that: 1) the land was currently being devoted principally to "agricultural use" to the degree of intensity generally accepted in the area; and 2) the property had been devoted principally to "agricultural use" or to production of timber or forest products for five of the preceding seven years. *See* Tex.Tax Code Ann. § 23.51(1) (Supp.1991). The Tax Code defines the term "agricultural use" as follows:

> "Agricultural use" includes but is not limited to the following activities: cultivating the soil, producing crops for human food, animal feed, or planting seed or for the production of fibers; floriculture, viticulture, and horticulture; raising or keeping livestock; raising or keeping exotic animals for the production of human food or of fiber, leather, pelts, or other tangible products having a commercial value; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure. The term also includes the use of land to produce or harvest logs and posts for the use in constructing or repairing fences, pens, barns, or other agricultural improvements on adjacent qualified open-space land having the same owner and devoted to a different agricultural use.

*Id.* at § 23.51(2).

The Robinsons' application for an open-space valuation alleged that they were currently devoting the property to an "agricultural use" as defined in § 23.51. The Board does not dispute this allegation. The Robinsons further alleged that their predecessors in ownership of the property, Bill and Jean Horne ("the Hornes"), had, for five of the preceding seven years, devoted the property principally to an agricultural use as defined by § 23.51. The Hays County Appraisal District disputed the latter allegation and denied the Robinsons' application for open-space valuation. The Robinsons appealed to the Hays County Appraisal Review Board, which affirmed the denial of the open-space valuation. The Robinsons then appealed to the district court.

The district court conducted a trial de novo pursuant to Tex.Tax Code Ann. § 42.23 (1982). Both parties presented evidence to the court in a non-jury trial. The court held that the Robinsons were entitled to have their property valued as open-space land under Art. VIII, § 1–d–1 of the Texas Constitution. In support of its judgment, the district court found that the Hornes had planted oats and wheat on the property from 1972 until 1987. The Hornes used two tractors to plow the land and till the soil in order to plant oats and wheat over this fifteen-year period. The Hornes also planted various fruit trees on approximately one acre of the property. The remainder of the unplanted tract was wasteland covered with cedar and caliche. After purchasing the property in 1987, the Robinsons continued the practices previously engaged in by the Hornes. In 1988, the Robinsons also began running livestock on the property.

Based on these findings of fact, the trial court concluded that the prior owners of the property had met the definition of "cultivating the soil" under § 23.51(2) of the Tax Code. Furthermore, the trial court concluded that, during the 1989 tax year, the Robinsons kept eight livestock animal units on the property. This agricultural usage fell within the degree of intensity recommended by the county extension

agent for that area. The Board does not dispute the latter conclusion on appeal.

The trial court held that, because their land had been used for agricultural purposes for five of the preceding seven years, and because the land was currently being devoted to agricultural use to the degree of intensity generally accepted in the area, the Robinsons were entitled to have their property classified as open-space agricultural land under the provisions of Article VIII, § 1–d–1 of the Texas Constitution. The trial court therefore ordered the Board to appraise and value the Robinsons' property as open-space agricultural land for the 1989 tax year.

## DISCUSSION AND HOLDINGS

■ The Board asserts two basic arguments. First, the Board argues that there is no evidence or, alternatively, insufficient evidence to support the trial court's holding that the property had been put to an "agricultural use" as defined in § 23.51(2) of the Tax Code for five of the seven years preceding the 1989 tax year. Second, the Board argues that there is no evidence or, alternatively, insufficient evidence to support the trial court's holding that the property was devoted "principally" to agricultural use for five of the seven years preceding the tax year as required by § 23.51(1) of the Tax Code.

In reviewing a "no evidence" challenge, we consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the court finding. The appellate court must disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford*, 726 S.W.2d at 16. Any probative evidence supporting the finding will be sufficient to overrule the point of error. Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361, 364 (1960). The Board's "insufficient evidence" point of error will be sustained

only if, after reviewing the entire record, the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The Board initially argues that there was no evidence or, alternatively, insufficient evidence to demonstrate that the Hornes had put the property to an agricultural use for five of the seven years preceding the 1989 tax year. The Board contends that the Hornes' activities on the property did not meet the definition of agricultural use as set out in § 23.51(2) of the Tax Code. The relevant provision of § 23.51(2) states, " 'Agricultural use' includes but is not limited to the following activities: cultivating the soil, producing crops for human food, animal feed, or planting seed or for the production of fibers; ...."

The Robinsons presented the testimony of Louise Stevenson, who had owned the land adjacent to the Robinsons' property for over fifty-seven years. Mrs. Stevenson testified that she and her husband sold the property to the Hornes in 1972. Mrs. Stevenson stated that she was a close friend of the Hornes and that she was familiar with how the Hornes had used their property from 1972 until 1987.

Mrs. Stevenson stated on direct examination that the Hornes grew oats and wheat on that portion of the land that was suitable for cultivation. She stated that the amount of cultivable land exceeded eight or nine acres. The Hornes did not cultivate the remainder of the property, which was a caliche hill covered with cedar trees and unsuitable for cultivation. Mrs. Stevenson personally helped the Hornes plant oats and wheat on the property. She testified that the Hornes had two tractors on the property, one of which was used primarily for cultivation. The Hornes had a disk, plows, shredders, and a grain drill on the property with which they cultivated the soil and planted the oats and wheat. The Hornes attempted to have the oats and wheat baled by a number of companies that travel through the state on an annual basis

assisting small farmers with the harvesting of their crops. However, the companies that were supposed to bale the grain would always harvest the larger farms first. Consequently, the Hornes' grain ruined before it could be harvested. Mrs. Stevenson also stated that she aided the Hornes in planting and maintaining an orchard on the property.[2]

The crux of the Board's contention is that cultivation of the soil, standing alone, is insufficient under § 23.51(2) to establish an agricultural use. The Board argues that the property owner must produce and harvest a crop to be used for human food, animal feed, or planting seed or for the production of fibers in order to qualify for an open-space valuation. We note that the State Property Tax Board's *Manual for the Appraisal of Agricultural Land*, which is the major source relied upon by appraisal districts throughout the state, separates cultivation of the soil as an activity constituting an agricultural use completely independent of the production of crops.

Based upon the facts of this case, we find it unnecessary to decide the legal issue of whether the mere plowing and tilling of the soil would qualify a property owner under § 23.51(2). In the present case, the evidence is clear that the Hornes, over an extended period of time, and certainly for five of the seven years preceding the 1989 tax year, not only plowed and tilled the soil, but also planted a crop of oats and wheat which they intended to harvest and sell. The fact that their crop was not of sufficient size or value to attract the commercial harvesting contractors does not diminish the agricultural use that was made of the property. We hold, therefore, that the testimony in this record constitutes sufficient evidence for the trial court to conclude that the property was put to an agricultural use as defined in § 23.51(2). Points of error one, three, four, five, six, ten, eleven and twelve are overruled.

The Board complains in its remaining points of error that there was no evidence or, alternatively, insufficient evidence to support the trial court's finding that the property had been devoted *principally* to an agricultural use for five of the seven years preceding the 1989 tax year. The Board argues that, because the property is "more suitable" for running livestock than anything else, and because the Hornes farmed only approximately one-third of the property, the Robinsons should be denied the open-space valuation.

Section 23.51(1) provides, in pertinent part, that qualified open-space land is land which has been "devoted principally to agricultural use" for five of the seven years preceding the year for which the open-space valuation is sought. In *Riess v. Williamson Cty. Appraisal Dist.*, 735 S.W.2d 633 (Tex.App.1987, writ denied), this Court held that § 23.51(1) should be construed with a view toward advancing the policies stated in Art. VIII, § 1–d–1 of the Constitution. We further held that Art. VIII, § 1–d–1 expressed two policies the legislature sought to achieve in appraising farm and ranch land: (1) preserving "open-space land"; and (2) providing for taxation on the basis of the land's "productive capacity." *Id.* at 637.

In view of these policies, we held that the question of whether a property has historically been "devoted principally to agriculture for five of the preceding seven years" is entirely separate from the question of whether the property is "currently devoted principally to agricultural use to the degree of intensity generally accepted in the area." In fact, "intensity of use" is not to be considered in determining whether the property has historically been "devoted principally to agriculture." *Id.* However, in this case, the Board appears to argue that the Hornes did not use the entire property "intensively enough" to constitute a *principal* agricultural use.

The evidence outlined above was sufficient to demonstrate that the property was

---

**2.** We note that the Board granted the Robinsons an open-space valuation on the acreage devoted    to an orchard.

**332**

devoted principally to agriculture for five of the seven years preceding the 1989 tax year. The Hornes cultivated and grew crops on approximately one-third of the property. This was the only cultivable land on the property. The question of whether the Hornes could have engaged in more intensive agricultural activities and could have run livestock on the wasteland portion of the property is irrelevant to this inquiry. We hold, therefore, that the record contains sufficient evidence for the trial court to conclude that the property was devoted principally to an agricultural use for five of the seven years preceding the 1989 tax year. We overrule points of error two, seven, eight, nine, thirteen, and fourteen.

The judgment of the trial court is affirmed.

POWERS, J., not participating.