**RESOLUTION TRUST CORPORATION,
as Receiver for San Antonio Savings
Association, F.A., Appellant,**

v.

**TARRANT COUNTY APPRAISAL
DISTRICT, Appellee.**

No. 2–95–053–CV.

Court of Appeals of Texas,
Fort Worth.

June 20, 1996.

Rehearing Overruled Aug. 20, 1996.

Popp & Ikard, and G. Walter McCool & Jay Breedveld, Austin, for Appellant.

Perdue, Brandon, Fielder, Collins & Mott, L.L.P., and Robert Mott, and Joseph T. Longoria, Houston, C. David Fielder, Arlington, for Appellee.

Before CAYCE, C.J., and DAUPHINOT, J., and CHUCK MILLER, J., (Assigned).

## OPINION

CAYCE, Chief Justice.

This is an ad valorem tax case. The questions presented are 1) whether the cessation of agricultural use constitutes a change in the use of land which triggers the assessment of the "additional tax" provided under section 23.55(a) of the Property Tax Code (hereinafter referred to as "the rollback tax"), and 2) if so, whether the Tarrant County Appraisal District ("the District") is barred from imposing the rollback tax on land owned by the Resolution Trust Corporation ("RTC") on the basis of sovereign immunity. We hold that a cessation of agricultural use does trigger the rollback tax, but that assessment of the tax against the RTC is barred by the doctrine of sovereign immunity. The judgment of the trial court is reversed and rendered.

Prior to tax year 1992, the subject property owned by the RTC had been used for agricultural purposes and, therefore, qualified for appraisal as open-space land pursuant to TEX. CONST. Art. VIII, § 1–d–1 (1978, amended 1995) and TEX. TAX CODE ANN. §§ 23.51–.57 (Vernon 1992 & Supp.1996) ("the Property Tax Code"). As a result, the property had been taxed on the basis of its production value as allowed under section 23.41(a) of the Property Tax Code. See TEX. TAX CODE ANN. § 23.41 (Vernon 1992) (agricultural land "is appraised at its value based on the land's capacity to produce agricultural products").

According to the parties' stipulation, the property ceased being used for agricultural purposes in tax year 1992. Consequently, the District changed the basis of its appraisal of the property from production value to market value pursuant to section 23.01(a) of the Property Tax Code. See TEX. TAX CODE

ANN. § 23.01(a) (Vernon 1992) ("Except as otherwise provided by this chapter, all taxable property is appraised at its market value. . . ."). In addition, the District made a determination that there had been a "change of use" of the property under section 23.55(a) and imposed a "rollback tax" against the property pursuant to that section. *See* TEX. TAX CODE ANN. § 23.55(a).

Upon exhausting the administrative procedures necessary to challenge the District's determination, the RTC filed suit in the 352nd District Court of Tarrant County, Texas. The case was tried to the court on stipulated facts. The trial court ruled that a change of use had occurred and that the District properly imposed the rollback tax against the property. The rollback tax amounts to approximately $180,000 in additional tax against the property.

■■■ The first issue presented to this court is whether the cessation of agricultural use of the subject property is a "change of use" of the land under section 23.55(a) of the Property Tax Code requiring the assessment of the rollback tax. Our resolution of this issue must begin with an analysis of the statute itself. *See Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). Since neither party complains that section 23.55(a) is ambiguous, we are required to give the statute its common ordinary meaning without the use of extrinsic aids or rules of statutory construction. *See id.* We must also give consideration to the construction that the statute has been given by the agency charged with its enforcement. *See, e.g., Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993); *Walker v. Appraisal Review Bd.*, 846 S.W.2d 14, 16 (Tex.App.— San Antonio 1992, writ denied); *Hays County Appraisal Dist. v. Robinson*, 809 S.W.2d 328, 331 (Tex.App.—Austin 1991, no writ); *see also* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1988) ("In construing a statute . . . a court may consider . . . [the] administrative construction of the statute. . . .").

Section 23.55(a) of the Property Tax Code provides, in pertinent part:

> *If the use of land . . . changes,* an additional tax is imposed on the land equal to the difference between the taxes imposed on the land for each of the five years preceding the year in which the change of use occurs that the land was appraised as provided by this subchapter and the tax that would have been imposed had the land been taxed on the basis of market value in each of those years. . . .

TEX. TAX CODE ANN. § 23.55(a) (Vernon 1992) (emphasis supplied). The statute was passed pursuant to an amendment to the Texas Constitution, TEX. CONST. Art. VIII, § 1–d–1, for the purpose of promoting "the preservation of open-space land by authorizing the legislature to tax open-space land devoted to farm or ranch purposes on the basis of its productive capacity." *Moore*, 845 S.W.2d at 821; *see HL Farm Corp. v. Self*, 877 S.W.2d 288, 292 (Tex.1994) (op. on reh'g).

Pursuant to the authority granted to it under section 23.52(d) of the Property Tax Code, the State Property Tax Board[1] promulgated rules that reiterate the original intent of Article VIII, section 1–d–1 of the Texas Constitution. These rules are contained in the MANUAL FOR THE APPRAISAL OF AGRICULTURAL LAND (1990) (the "1990 Ag Manual"). They indicate that the rollback tax is assessed when the landowner stops using the land for agricultural purposes in order to recapture the taxes the owner would have paid had the property been taxed at market value for each year covered by the rollback. The pertinent rules are as follows:

> The law imposes a "rollback" tax on 1–d–1 land when the owner stops using it for agriculture. . . . Under 1–d–1, the rollback tax is a penalty for taking the land out of agricultural production.

> This penalty is commonly called a rollback because it recaptures the taxes the owner would have paid had his property been taxed at market value for each year covered by the rollback. . . .

> \* \* \* \* \* \*

> . . . The rollback tax equals the difference between the taxes the owner actually

---

1. In 1991, the State Property Tax Board was abolished, and its duties and responsibilities were transferred to the Office of the State Comptroller.

paid in the five years preceding the change in use and the taxes the owner would have paid on his property's market value.

Technically, the tax is a new, additional tax imposed by law on the date the cessation or change of use occurs. It has its own delinquency date, and it does not exist until the event that triggers the rollback occurs.

The property owner can trigger the rollback by ending agricultural operations or diverting the property to a non-agricultural use. Selling the property doesn't trigger the 1–d–1 rollback. If the property owner diverts only part of a property to a non-agricultural use, the rollback tax only applies to the changed portion.

The chief appraiser determines if and when the change of use occurs and must send the owner written notice of the determination. If the owner does not protest the determination or the appraisal review board decides the use has changed, the tax assessor will calculate the amount of additional tax due, add the appropriate amount of interest, and send a rollback tax bill.

## WHAT QUALIFIES AS A CHANGE OF USE?

A change of use is a physical change. The owner must stop using the land for agricultural purposes.

1990 Ag Manual, *supra* at 31.

■ When we give section 23.55(a) its plain and ordinary meaning, we find that it simply means what it says: the rollback tax is imposed when "the use of land ... changes [from an agricultural to a nonagricultural use]." This interpretation is derived substantially from, and is consistent with, the State Property Tax Board's construction of the statute. Accordingly, we hold that a triggering event for imposing the rollback tax of section 23.55(a) is the cessation of agricultural use of the property. Since that is precisely what occurred in this case, we find that the trial court was correct in declaring that the RTC's cessation of agricultural use constituted a change of use for rollback tax purposes.

During oral argument and in a post-submission letter brief, the RTC asserted for the first time that the trial court was without jurisdiction to adjudge the RTC liable for the rollback tax under the federal doctrine of sovereign immunity. The District contends that sovereign immunity does not bar the tax and that, even if it did, the defense of sovereign immunity has been waived because it was not raised in the trial court. In determining whether sovereign immunity may be asserted against the District, we find that the specific construction and application of federal substantive defenses involve questions of federal law.[2] *See Larsen v. FDIC/Manager Fund*, 835 S.W.2d 66, 68 (Tex.1992).

■ Sovereign immunity is a jurisdictional bar to those claims that are "prosecuted against the United States." *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 412, 5 L.Ed. 257, 293 (1821); *see Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15, 23 (1963); *Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 33 (5th Cir.1992), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). Federal agencies are entitled to rely on sovereign immunity as a defense because the United States is the real party in interest. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citing *FDIC v. Meyer*, 510 U.S. 471, 475–76, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308, 316 (1994)); 14 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §3655, at 214–16 (1985).

■ "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, 613 (1980). Where no such consent exists, sovereign immunity operates as a jurisdictional bar that may be asserted at any stage of the proceedings.[3] *Taylor*,

---

**2.** In arguing that the RTC has waived its immunity, the District relies exclusively on state decisional law. *See Davis v. City of San Antonio*, 752 S.W.2d 518, 519 (Tex.1988); *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 7–8 (Tex.1974); *Texas Co. v. State*, 154 Tex. 494, 281 S.W.2d 83,

90 (1955). These cases are inapplicable because we are constrained to apply federal law.

**3.** In contrast, other types of federal defenses may be waived if not timely asserted in the trial court, where there is an opportunity to do so. *See*

970 F.2d at 34; *see, e.g., Mitchell,* 445 U.S. at 538, 100 S.Ct. at 1351, 63 L.Ed.2d at 613; *Stanley v. CIA,* 639 F.2d 1146, 1156 (5th Cir.1981); *California v. Quechan Tribe of Indians,* 595 F.2d 1153, 1154 n. 1 (9th Cir. 1979); *see generally* WRIGHT, MILLER & COOPER, supra, § 3654 (1985).

The specific question of whether federal sovereign immunity may be raised for the first time on appeal, when, as in this case, the government agency claiming immunity consented to the trial court's jurisdiction, was addressed in *United States v. U.S.F. & G.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). In *U.S.F. & G.,* the United States, on behalf of the Choctaw and Chickasaw Indian Nations, filed a claim against United States Fidelity & Guaranty Co. ("U.S.F. & G."), which was in bankruptcy proceedings in a Missouri district court. The Missouri court allowed the claim, but also allowed U.S.F. & G. to cross-claim for a larger amount and decreed the balance in favor of U.S.F. & G. against the Nations.

In another suit in Oklahoma brought by the United States for the Nations against the surety on a bond given by U.S.F. & G., U.S.F. & G. pleaded the former judgment as res judicata and asked for a determination of the accounts. In reply, the United States pleaded that the Missouri judgment was void because the court was "without jurisdiction to render the judgment" against the United States or the Nations. The district court concluded that the Missouri judgment barred the claim against U.S.F. & G., and the Tenth Circuit Court of Appeals affirmed.

The U.S. Supreme Court reversed and remanded. In doing so, it held that the Missouri judgment was void because the Missouri court did not have jurisdiction to adjudicate a claim against the United States or its dependent sovereignties, the Nations, without the consent of Congress. The Court expressly rejected the contention that the immunity defense was waived because the United States invoked the jurisdiction of the Missouri district court by filing a claim against U.S.F. & G. and by failing to object to the district court's jurisdiction.

In holding that the sovereign immunity defense could not be waived by the mere consent of the government agency, the Court said:

It is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelage that *[sovereign] immunity cannot be waived by officials. If the contrary were true, it would subject the government to suit in any court in the discretion of its responsible officers. This is not permissible.*

The reasons for the conclusion that this immunity may not be waived govern likewise the question of res judicata. As no appeal was taken from this Missouri judgment, it is subject to collateral attack only if void. *It has heretofore been shown that the suability of the United States ... whether directly or by cross-action, depends upon affirmative statutory authority. Consent [of Congress] alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void. The failure of officials to seek review cannot give force to this exercise of judicial power.* Public policy forbids the suit unless consent is given, as clearly as public policy makes jurisdic-

Larsen, 835 S.W.2d at 74 (holding that section 1821 does not give FDIC absolute new substantive right to assert *D'Oench, Duhme*-type federal defenses for first time on appeal); *see also Baumann v. Savers Federal Sav. & Loan Ass'n,* 934 F.2d 1506, 1514 (11th Cir.1991) (RTC allowed to assert defense for first time on appeal because it had no opportunity to raise it in trial court), *cert. denied,* 504 U.S. 908, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); *Resolution Trust Corp. v. McCrory,* 951 F.2d 68, 71 (5th Cir.) (RTC entitled to raise argument for first time on appeal as it was not a party to proceedings in district court), *cert. denied,* 506 U.S. 972, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992); *Union Federal Bank v. Min-*

*yard,* 919 F.2d 335, 336 (5th Cir.1990) (FDIC allowed to assert *D'Oench, Duhme* defense on appeal because it had no opportunity to assert it at trial); *accord Grubb v. FDIC,* 868 F.2d 1151, 1158 (10th Cir.1989); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n,* 885 F.2d 266, 275 (5th Cir.1989); *Thurman v. FDIC,* 889 F.2d 1441, 1446–47 (5th Cir.1989). However, federal appellate courts often do allow parties to assert an argument not raised in the trial court, as a matter of discretion. *See, e.g., Baumann,* 934 F.2d at 1512; *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401–02 (5th Cir.1981); *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360–61 (11th Cir.1984).

tion exclusive by declaration of the legislative body.

*Id.* at 513–14, 60 S.Ct. at 657, 84 L.Ed. at 899 (emphasis supplied) (footnotes omitted).

■ We deem the holding and rationale of *U.S.F. & G.* to be controlling here. The District does not dispute that the RTC is an agency of the United States that is entitled to rely on the sovereign immunity defense. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C.S. § 1441a(b)(1)(A) (Law. Co-op. 1992) (RTC is an "instrumentality of the United States"). Therefore, applying the rule of *U.S.F. & G.,* we hold that the RTC may assert federal sovereign immunity for the first time on appeal even though its officials consented to the jurisdiction of the trial court by filing suit.[4] *See United States v. Associated Air Transport, Inc.,* 256 F.2d 857, 862 (5th Cir.1958); *United States v. Patterson,* 206 F.2d 345, 348 (5th Cir.1953).

■ Having determined that the RTC may assert sovereign immunity for the first time on appeal, we must now determine whether there is any express congressional authority waiving the immunity for rollback taxes. The doctrine of sovereign immunity exempts agencies of the United States from liability for punitive fines or assessments, absent express congressional authorization.

*Missouri Pac. R.R. v. Ault,* 256 U.S. 554, 563–65, 41 S.Ct. 593, 597, 65 L.Ed. 1087, 1092–93 (1921); *Taylor,* 970 F.2d at 33; *Citizens Nat'l Bank v. Cockrell,* 850 S.W.2d 462, 468 (Tex.1993) (Gonzalez, J., concurring). The RTC contends that, although Congress waived immunity for taxes on real estate held by the RTC under FIRREA, 12 U.S.C.S. § 1441a(g) (Law. Co-op.1992), it is exempted from the rollback tax because the tax is a penalty for taking land out of agricultural production for which Congress did not waive immunity.[5] Section 1441a(g) of FIRREA reads in pertinent part:

**(g) Exemption from State and local taxation.** The [RTC] and the Thrift Depositor Protection Oversight Board, the capital, reserves, surpluses, and assets of the Corporation and the Thrift Depositor Protection Oversight Board, and the income derived from such capital, reserves, surpluses, or assets shall be exempt from State, municipal, and local taxation *except taxes on real estate held by the Corporation,* according to its value as other similar property held by other persons is taxed.

12 U.S.C.S. § 1441a(g) (emphasis supplied).

■ In determining whether the exemption found in section 1441a(g) includes taxes in the nature of penalties or fines, we must construe it strictly in favor of immunity

---

**4.** However, we do not in any way condone the RTC's tactic of filing suit against the District and then asserting on appeal that the trial court lacked jurisdiction. Rules 3.01, 3.02, and 3.03 of the Texas Disciplinary Rules of Professional Conduct collectively prohibit a lawyer from abusing the legal process by the filing of frivolous lawsuits, taking actions that unreasonably increase the cost or other burdens of litigation, and failing to disclose to the court a material fact or legal argument. Tex. Disciplinary R. Prof. Conduct 3.01, 3.02, 3.03 (1990), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G app. (Vernon Supp.1996) (State Bar Rules art. X, § 9). In this case, the RTC failed to raise the issue of sovereign immunity until the parties and the courts were burdened with months of litigation. At a minimum, the RTC's conduct falls within the broad range of "abusive tactics," which the Supreme Court of Texas sought to eliminate through its promulgation and adoption of "The Texas Lawyer's Creed—A Mandate for Professionalism."

**5.** The RTC also argues that it is exempted from the tax under section 1825(b)(3) of FIRREA,

which expressly exempts the Federal Deposit Insurance Corporation ("FDIC") from "amounts in the nature of penalties or fines." FIRREA, 12 U.S.C.S. § 1825(b)(3) (Law.Co-op.Supp.1996). The RTC asserts that it has the benefit of section 1825(b)(3) because it is entitled to the same powers and immunities as the FDIC under the law of agency. *See* FIRREA, 12 U.S.C.S. § 1441a(b)(1)(B). The District urges that the RTC is not entitled to the immunity afforded to the FDIC under section 1825(b)(3) and that the RTC has its own immunity provision that does not exempt the RTC from rollback taxes. Since the RTC is immune from liability for any amounts in the nature of penalties or fines absent an express waiver of Congress under the doctrine of sovereign immunity, *see Olney Sav. & Loan Ass'n,* 885 F.2d at 273, we do not deem it necessary to address whether the FDIC's exemption from penalties and fines under section 1825(b)(3) applies to the RTC. However, we note that at least one federal appellate court has applied section 1825(b)(3) to the RTC. *See Birdville Indep. Sch. Dist. v. Hurst Assocs.,* 806 F.Supp. 122, 128 (N.D.Tex.1992).

against such penalties. *See McCarty v. United States,* 929 F.2d 1085, 1087 (5th Cir. 1991); *Ynclan v. Department of Air Force,* 943 F.2d 1388, 1391 (5th Cir.1991). Having done so, we find nothing in section 1441a(g), or any other federal statute, expressly indicating that Congress has waived the RTC's immunity from penalty taxes. Therefore, if the rollback tax is a penalty tax, we must find that the RTC is exempt from the tax notwithstanding the general waiver for real estate taxes found in section 1441a(g). The question of whether the rollback tax is a penalty must be determined under state law. *See Reconstruction Fin. Corp. v. Beaver County,* 328 U.S. 204, 207–10, 66 S.Ct. 992, 994–96, 90 L.Ed. 1172, 1174–76 (1946); *Reconstruction Fin. Corp. v. Texas,* 229 F.2d 9, 11 (5th Cir.), *cert. denied,* 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956).

▆▆▆ In support of its argument that the rollback tax is a penalty for taking land out of agricultural production, the RTC primarily relies on the use of the word "sanction" in the statute to define the tax, *see* TEX. TAX CODE ANN. § 23.55(f), (g), (j), and the authority granted the legislature in the Texas Constitution to "impose *sanctions* in furtherance of" the open-space land policy. *See* TEX. CONST. Art. VIII, § 1–d–1(a) (emphasis supplied). The RTC also directs us to passages in the 1990 Ag Manual where the rollback tax is specifically defined as a *"penalty* for taking the land out of agricultural production." 1990 AG MANUAL, *supra* at 31 (emphasis supplied).

The District, on the other hand, relies on the express language of the statute and the 1990 Ag Manual that defines the rollback as an "additional tax." TEX. TAX CODE ANN. § 23.55(a); 1990 AG MANUAL, *supra* at 31. According to the District's analysis, the rollback tax is merely another tax on the property that is intended to recapture the taxes the owner would have paid had the property been taxed at market value for each of the five years preceding the change of use.

The pertinent parts of section 23.55 read as follows:

§ 23.55. Change of Use of Land

(a) If the use of land ... changes, an *additional tax* is imposed on the land ...

plus interest at an annual rate of seven percent calculated from the dates on which the differences would have become due.

(b) A tax lien attaches to the land on the date the change of use occurs to secure payment of the *additional tax* and interest imposed by this section and any penalties incurred. The lien exists in favor of all taxing units for which the *additional tax* is imposed.

(c) The *additional tax* imposed by this section does not apply to a year for which the tax has already been imposed.

(d) If the change of use applies to only part of a parcel that has been appraised as provided by this subchapter, the *additional tax* applies only to that part of the parcel....

(e) ... The chief appraiser shall deliver a notice of the [change of use] determination to the owner of the land.... If the owner does not file a timely protest or if the final determination of the protest is that the *additional taxes* are due, the assessor for each taxing unit shall prepare and deliver a bill for the *additional taxes* plus interest as soon as practicable....

(f) The *sanctions* provided by Subsection (a) of this section do not apply if the change of use occurs as a result of a sale for right-of-way or a condemnation.

(g) If the use of the land changes to a use that qualifies under Subchapter E of this chapter, the *sanctions* provided by Subsection (a) of this section do not apply.

(h) *Additional taxes,* if any, for a year in which land was designated for agricultural use as provided by Subchapter C of this chapter (or Article VIII, Section 1–d, of the constitution) are determined as provided by that subchapter, and the *additional taxes* imposed by this section do not apply for that year.

\* \* \* \* \* \*

(j) The *sanctions* provided by Subsection (a) do not apply to a change in the use of land if: [the land consists of a cemetery].

TEX. TAX CODE ANN. § 23.55 (Vernon 1992 & Supp.1996) (emphasis supplied).

The 1990 Ag Manual discusses the tax in the following terms:

> Under 1–d–1, the rollback tax is a *penalty* for taking the land out of agricultural production.
>
> This *penalty* is commonly called a rollback because it recaptures the taxes the owner would have paid had his property been taxed at market value for each year covered by the rollback.
>
> \* \* \* \* \* \*
>
> Technically, the tax is a new, *additional tax* imposed by law on the date the cessation or change of use occurs. It has its own delinquency date, and it does not exist until the event that triggers the rollback occurs.
>
> \* \* \* \* \* \*
>
> ... Rollback is a *serious economic penalty* that should not be imposed when circumstances beyond a property owner's control cause an abnormally long but temporary suspension of agriculture.

1990 AG MANUAL, *supra* at 31–32 (emphasis supplied).

The language of section 23.55 plainly characterizes the rollback tax as both an "additional tax" and as a "sanction." This dual definition is carried forward in the 1990 Ag Manual where the rollback tax is not only described as an "additional tax," but also as a "penalty" for taking land out of agricultural production. Therefore, we find that both the statute and the 1990 Ag Manual define the rollback as a tax in the nature of a penalty.

■■■ In giving the statute this construction, we have given serious consideration to the guidelines and procedures governing the rollback tax in the 1990 Ag Manual. "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Moore*, 845 S.W.2d at 823. The 1990 Ag Manual's reference to the rollback tax as a "penalty" is not contradictory to the statute. Rather, the "penalty" language in the 1990 Ag Manual is consistent with the wording of the statute that defines the tax as a "sanc-tion." The word "sanction" is defined as "[t]hat part of a law which is designed to secure enforcement by imposing a *penalty* for its violation." BLACK'S LAW DICTIONARY 1203 (5th ed.1979) (emphasis supplied). It is also defined as "a restrictive measure used to ... prevent some future activity." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2008–09 (1981). The statute and the 1990 Ag Manual clearly indicate that the rollback tax is intended to prevent landowners from changing the use of their land with impunity after having benefitted from the open-space land tax provisions.

Contrary to the District's reasoning, the rollback tax may have a penalty purpose, even though it is imposed on the market value of the property, has its own interest calculation and delinquency date, and raises revenue for the taxing district. Our federal courts have recognized that taxes often have regulatory purposes in addition to raising revenue, but these purposes do not invalidate their status as taxes. In *United States v. Sanchez*, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950), the Supreme Court held that a tax on the transfer of marihuana, which implemented a congressional purpose to restrict illegal traffic in the drug was a valid tax levy, despite its regulatory effect and its close resemblance to a penalty:

> It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed. The principle applies even though the revenue obtained is obviously negligible, or the revenue purpose of the tax may be secondary....

*Id.* at 44, 71 S.Ct. at 110, 95 L.Ed. at 49 (citations omitted). A much earlier decision upheld a liquor tax during prohibition:

> A tax on intoxicating liquor does not cease to be such because the sovereign has declared that none shall be manufactured, and because the main purpose in retaining the tax is to make law-breaking less profitable.

*United States v. One Ford Coupe Auto.*, 272 U.S. 321, 328, 47 S.Ct. 154, 156, 71 L.Ed. 279, 284 (1926).

In *United States v. Ross*, 458 F.2d 1144 (5th Cir.), *cert. denied*, 409 U.S. 868, 93 S.Ct.

167, 34 L.Ed.2d 118 (1972), the Fifth Circuit upheld a tax on the transfer of destructive devices such as molotov cocktails and declined interest in the motives underlying enactment of the tax:

> The test of validity is whether on its face the tax operates as a revenue generating measure and the attendant regulations are in aid of a revenue purpose. The motives that move Congress to impose a tax are no concern of the courts. Furthermore, that an act accomplishes another purpose than raising revenue does not invalidate it.

*Id.* at 1145 (citations omitted).

 Thus, the fact that the rollback tax is imposed on the value of the property to recapture taxes that would have been paid based on a market value appraisal, as the District correctly points out, does not preclude it from having the purpose of penalizing property owners for the act of ceasing to use their property for agricultural purposes. *Cf. Jackson v. Sharp,* 846 S.W.2d 144, 146 (Tex.App.—Austin 1993, no writ) (holding that Controlled Substances Tax is a valid revenue-raising tax, even though it also serves law enforcement purpose).

Upon review of all relevant provisions of the Property Tax Code as well as the 1990 Ag Manual, we find that section 23.55(a) is capable of only one interpretation: it provides for the imposition of an additional revenue-raising tax as a penalty for changing the use of real estate that had been previously taxed as open-space land. Because the rollback tax is a penalty, and not merely a tax on real estate, the RTC is not liable for the tax under section 1441a(g) of FIRREA because there is no express congressional waiver for such a penalty.

Accordingly, the trial court's judgment is reversed, and judgment is rendered that the District take nothing against the RTC.