COMPASS BANK, Appellant,

v.

BENT CREEK INVESTMENTS, INC., Appellee.

No. 2–00–299–CV.

Court of Appeals of Texas, Fort Worth.

July 19, 2001.

Gardere & Wynne, L.L.P., Douglas S. Lang, Stacy R. Obenhaus, Karen M. Kohn, Dallas, for Appellant.

Frank M. Newman, Jr. & Associates, P.C., Kristian M. Summers, Fort Worth, for Appellee.

Panel B: DAY, DAUPHINOT, and GARDNER, JJ.

## OPINION

GARDNER, Justice.

### I. INTRODUCTION

This appeal involves ad valorem taxes. Appellee Bent Creek Investments, Inc. sued Appellant Compass Bank for a breach of the warranty against encumbrances in a conveyance of property by general warranty deed, seeking to recover sums that it had paid to discharge agricultural rollback tax liens on the property. Compass Bank appeals from a summary judgment granted in favor of Bent Creek, contending that Bent Creek's summary judgment evidence failed to establish that a tax lien had attached to the property at the time of the execution and delivery of the warranty deed. We reverse and remand.

### II. BACKGROUND

#### A. Agricultural Rollback Taxes

To understand the underlying facts and issues relevant to this appeal, a review of the law regarding agricultural rollback taxes is beneficial. Land used for agricultural purposes is appraised for tax purposes as "qualified open-space land." TEX. CONST. art. VIII, § 1–d–1; TEX. TAX CODE ANN. §§ 23.46, .51 (Vernon 1992 & Supp.2001). Land designated for agricultural use is appraised at its value based on the land's capacity to produce agricultural products. TEX. TAX CODE ANN. § 23.01(a). When property appraised as open-space land ceases being used for agricultural purposes, a rollback tax is assessed in order to recapture the taxes the owner would have paid had the property been taxed at market value for each year covered by the rollback. *Id.* § 23.55(a); *Res-*

*olution Trust Corp. v. Tarrant County Appraisal Dist.,* 926 S.W.2d 797, 799 (Tex. App.—Fort Worth 1996, no writ). The rollback tax equals the difference between the taxes the owner actually paid in the five years preceding the change in use and the taxes the owner would have paid on his property's market value. TEX. TAX CODE ANN. § 23.55(a); *Resolution Trust Corp.,* 926 S.W.2d at 799. The property owner can trigger the rollback by ending agricultural operations or diverting the property to a non-agricultural use. *Resolution Trust Corp.,* 926 S.W.2d at 800.

The rollback tax is a new, additional tax imposed by law, which attaches on the date the change of use occurs. TEX. TAX CODE ANN. § 23.55(b); *Resolution Trust Corp.,* 926 S.W.2d at 800. The chief appraiser determines if and when the change of use occurs and must send the owner written notice of the determination to allow the owner an opportunity to protest that determination. TEX. TAX CODE ANN. § 23.55(e); *Resolution Trust Corp.,* 926 S.W.2d at 800 (citing MANUAL FOR THE APPRAISAL OF AGRICULTURAL LAND (1990)).

#### B. Facts

The summary judgment record reveals the following facts relevant to this appeal:

In December 1990, Stemmons Northwest Bank, N.A. ("Stemmons") acquired a 109–acre tract of land in Tarrant County ("Property") by deed in lieu of foreclosure. In November 1992, Stemmons entered into a Farm Lease with Kenneth K. Reed ("Reed"), in which Reed agreed to cultivate the Property during the term of the lease by "harvesting any existing natural grasses, employing weed control, insect control, shredding, tilling, and planting seed and fertilizing, as appropriate." The Farm Lease was for a term of one year and was automatically renewable unless

either party gave thirty days written notice of termination.

In 1993, Stemmons merged with Fidelity Bank, N.A. ("Fidelity"), and as part of this merger, Stemmons conveyed the Property by Special Warranty Deed to Fidelity, making Fidelity the lessor. On December 29, 1995, Fidelity conveyed the Property to James Stephens by a General Warranty Deed ("Deed") for $300,000.[1] Under the terms of the Deed, Fidelity warranted that, at the time the Deed was executed and delivered to Stephens, there was no existing encumbrance on the Property except those "in effect and shown of record."

On the same day Stephens acquired the Property from Fidelity, he re-conveyed the Property in two parcels to Bent Creek and N.H. Theodore ("Theodore"). After acquiring the Property from Stephens, Bent Creek and Theodore were required to pay and did pay rollback taxes for the years of 1991 through 1993 to discharge property tax liens on the Property. In December 1996, Theodore paid $7,389.98 in rollback taxes and penalties to the Tarrant County local taxing authority. In June and July 1997, Bent Creek paid $30,639.39 in rollback taxes and penalties to the ·Tarrant County local taxing authority.

In February 1998, Compass Bank merged with Fidelity and, therefore, succeeded to the interests and liabilities of Fidelity. In December 1999, Bent Creek sued Compass Bank for breach of the warranty against encumbrances seeking to recover the monies it had paid to the Tarrant County local taxing authority.[2] Bent Creek alleged that, at the time the Deed was executed and delivered to Stephens, the Property was encumbered by an unrecorded rollback tax lien for the years of 1991 through 1993. This unrecorded tax

lien was allegedly caused by a "change in use" of the Property from agricultural use to nonagricultural use that occurred during the period of time Fidelity owned it. See TEX. TAX CODE ANN. § 23.55(a). Compass Bank answered by general denial.

In June 2000, Bent Creek filed a motion for summary judgment on its cause of action for a breach of the warranty against encumbrances against Compass Bank. The only evidence presented by Bent Creek regarding the alleged change of use of the Property was an affidavit from Reed, the farm lessee ("Reed Affidavit"), in which he stated that "[he] did not plant or harvest any crops" on the Property in 1995. Bent Creek also attached affidavits of Theodore and Bent Creek's President, Jim Hudson. Theodore stated in his affidavit that he paid the sum of $7,389.98 to discharge rollback taxes, costs, and penalties attributable to the years of 1991 through 1993, which were assessed against the Property he acquired from Stephens. Hudson stated in his affidavit that, at the time Bent Creek purchased the Property from Stephens, it was being taxed for ad valorem tax purposes at its full market value as opposed to a reduced market value attributable to an agricultural exemption, and that, when Bent Creek attempted to sell portions of the Property, it was required to pay $30,639.39 for rollback taxes and related costs and penalties assessed against the Property for the taxable years of 1991 through 1993.

On July 20, 2000, Compass Bank filed a motion for continuance of the summary judgment hearing to allow it additional time to obtain documents from the Tarrant Appraisal District regarding the tax history on the Property in order to establish if,

1. Reed's Farm Lease ended some time after this conveyance for unknown reasons.

2. Theodore assigned his claims against Stephens and Fidelity to Bent Creek.

when, and why a rollback tax was assessed.

Compass Bank filed a response to Bent Creek's motion for summary judgment. Compass Bank argued that, absent evidence of a determination by the Tarrant County Appraisal District regarding when a change of use had occurred on the Property, Bent Creek's summary judgment evidence was insufficient to establish as a matter of law that a tax lien had attached to the Property prior to its conveyance to Stephens in December 1995.

On July 27, 2000, one day before the hearing on Bent Creek's motion for summary judgment, Compass Bank filed a motion seeking leave from the court to file an amended response, including an affidavit of Dale Rector, the Tarrant County tax appraiser who had made an official determination on behalf of the appraisal district, that there had been a change of use of the Property on June 26, 1996. Attached to the Rector Affidavit were documents entitled "Notification of Use Change," dated September 26, 1996, which supplied notice that the Property "may be subject to recovery of deferred taxes plus interest." These notices also specified a "field check date" of June 26, 1996. According to the Rector Affidavit, the field check date is the date of change of use for purposes of attachment of a rollback tax lien.

On July 28, 2000, at a hearing immediately preceding the hearing on Bent Creek's motion for summary judgment, the trial court denied Compass Bank's motion for continuance and motion for leave to file an amended response, effectively excluding the Rector Affidavit. The trial court subsequently granted Bent Creek's motion for summary judgment and ordered that Bent Creek was entitled to recover $38,029.37 plus prejudgment interest of $12,073.11 from Compass Bank.

Compass Bank appeals from this order of the trial court.

## III. DISCUSSION

### A. *Issues*

On appeal, Compass Bank first contends that the trial court erred in granting summary judgment in favor of Bent Creek because Bent Creek failed to present legally sufficient evidence to establish, as a matter of law, that there was a rollback tax lien encumbering the Property at the time the Deed was executed and delivered on December 29, 1995 to Stephens, Bent Creek's predecessor in interest. Specifically, Compass Bank contends that, in order to establish as a matter of law that there was a lien on the Property at the time of the conveyance, Bent Creek had to present evidence that, on or prior to December 29, 1995, the chief appraiser of the Tarrant Appraisal District had determined that the use of the Property had changed so that it was no longer in "agricultural use," as that term is statutorily defined. Compass Bank further contends that, absent such a determination of change of use by the chief appraiser, the rollback tax could not attach to the Property. In its second issue on appeal, Compass Bank contends that the trial court abused its discretion in not granting Compass leave to file supplemental evidence, including the Rector affidavit.

### B. *Standard of Review*

The standards for reviewing a motion for summary judgment are well established. In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988

S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc*, 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

### C.  Statutory Construction

■ Our answer to the questions before us requires a statutory construction of section 23.55(e). A court's primary objective in construing a statute is to determine and give effect to the legislative intent. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). That purpose is accomplished by first looking at the plain and common meaning of the statute's words. *Id.* In applying the plain and common meaning of the lan-guage in a statute, courts may not, by implication, enlarge the meaning of any word in the statute beyond its ordinary meaning. The reason for the rule is that such implications are inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 940 (Tex.1993). In our construction, we must presume that the entire statute is intended to be effective, a just and reasonable result is intended, a result feasible of execution is intended, and that the public interest is favored over private interest. TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998).

### D.  Application

■ To be entitled to judgment as a matter of law on its cause of action for breach of the warranty against encumbrances, Bent Creek had to establish as a matter of law that a rollback tax lien had attached to the Property before the December 1995 conveyance. *See* TEX. PROP. CODE ANN. § 5.024 (Vernon 1984) (stating encumbrance includes tax lien on real property); *Natland Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 60 (Tex.App.—Corpus Christi 1993, writ denied) (holding warranty is breached upon execution and delivery of deed with existing encumbrance on property). Bent Creek's summary judgment evidence does not meet this burden. Bent Creek's summary judgment evidence, including the Reed Affidavit, the Theodore Affidavit, and the Hudson Affidavit, fails in two respects.

■ First, absent a determination by the chief appraiser, no tax lien attaches. Section 23.55(e) states that "[a] determination that a change in use of the land has occurred is made by the chief appraiser[,]" which we believe clearly expresses that the rollback tax lien does not arise purely as a

matter of law, but is dependent upon an official determination by the chief appraiser. *See* TEX. TAX CODE ANN. § 23.55(e).

The legislative history behind section 23.55 further supports this proposition. Before 1989, the statute contained no language expressing who made the determination that a change in use of the land occurred.[3] The pre–1989 version simply stated that the "assessor shall prepare and deliver a statement for the additional taxes as soon as practicable after the change of use occurs."[4] In 1989, however, the Legislature amended the statute to include the current version of section 23.55(e), stating that "[a] determination that a change in use of the land has occurred is made by the chief appraiser."[5] The significance of this amendment is clear, in that it places exclusive authority in the chief appraiser to make the necessary determinations that a "change of use" has occurred on land for purposes of attaching a rollback tax lien.

The Texas Attorney General has adopted this precise interpretation that only the chief appraiser's determination that a change of use has occurred can trigger the imposition of the rollback tax lien. Op. Tex. Att'y Gen. No. LO–054 (1995). He states that section 23.55 of the tax code "makes it clear, we think, that it is the chief appraiser who makes the determination of such change of use so as to trigger imposition of the rollback tax." *Id.*

The Dallas Court of Appeals rendered a decision consistent with this position, as well. In *Anderton v. Rockwall Central Appraisal District,* the court explained that the appraisal district's determination that land is no longer being used for agricultural purposes is the trigger that causes an additional rollback tax lien to attach to the land pursuant to section 23.55. 26 S.W.3d 539, 543–44 (Tex.App.—Dallas 2000, no pet.). Specifically, the court stated that "[a] section 23.55 rollback tax is dependent solely upon an appraisal district's determination that the land is no longer being used for agricultural purposes." *Id.* at 543–44.

The foregoing observations support the conclusion that no tax lien attaches until the proper taxing authority renders its official determination that a change of use has occurred. Here, that evidence is totally lacking. Absent some evidence of the chief appraiser's determination that a change of use occurred that would create the potential for rollback tax liability, Bent Creek cannot establish its entitlement to judgment as a matter of law.

Second, even assuming arguendo that Bent Creek's summary judgment evidence is sufficient to establish that a tax lien on the Property existed, it still fails to establish when the tax lien attached to the Property. Absent evidence of a determination by the chief appraiser as to *when* the tax lien attached to the Property, Bent Creek cannot be entitled to judgment as a matter of law that the lien encumbered the Property at the time of the December 29, 1995 conveyance to Stephens. *See Resolution Trust Corp.,* 926 S.W.2d at 800 (holding chief appraiser makes determination when tax lien attaches).

In sum, because Bent Creek's summary judgment evidence failed to establish that a tax lien encumbered the Property and, if so, when the tax lien attached to the Property, we hold that the trial court erred in granting summary judgment in favor of Bent Creek on its cause of action against

3. Act of May 24, 1979, 66th Leg., R.S., ch. 841, § 23.55(e), 1979 Tex. Gen. Laws 2217, 2260.

4. *Id.*

5. Act of May 26, 1989, 71st Leg., R.S., ch. 796, § 20, 1989 Tex. Gen. Laws 3591, 3598.

Compass Bank for breach of the warranty against encumbrances. We sustain Compass Bank's first issue.

Having sustained Compass Bank's first issue, we need not address its second issue. *See* Tex.R.App. P. 47.1.

### IV. Conclusion

Having sustained Compass Bank's first issue, we reverse the trial court's judgment and remand the case for trial.