# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00633-CV

**CenterPoint Energy Houston Electric, LLC, Appellant**

**v.**

**Public Utility Commission of Texas, Appellee**

### DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS

### O P I N I O N

In this direct appeal, we consider a challenge to the validity of a rule promulgated by the Public Utility Commission governing electric utilities' implementation of statutorily mandated energy-efficiency programs designed to reduce electricity consumption. *See* 16 Tex. Admin. Code § 25.181 (2011) (Pub. Util. Comm'n, Energy Efficiency Goal).[1] Appellant, CenterPoint Energy Houston Electric, LLC ("CenterPoint"), contends that section 39.905 of the Public Utilities Regulation Act ("PURA") requires that the Commission include a "lost-revenue adjustment mechanism" ("LRAM") in rule 25.181 and that the Commission's failure to do so renders the rule invalid. *See* Tex. Util. Code Ann. § 39.905 (West Supp. 2010). CenterPoint alternatively contends that rule 25.181 is invalid because the Commission's failure to include an LRAM as part of

---

[1] In addition to the Commission, three intervenors argue in support of the rule. They are the Office of Public Utility Counsel, the City of Houston, and Texas Industrial Energy Consumers.

rule 25.181 resulted from the Commission's erroneous interpretation of its own authority to do so under PURA. We will affirm.

**BACKGROUND**

In 1999 the legislature enacted PURA section 39.905, which established energy-efficiency goals designed to reduce Texas customers' energy consumption. *See id.* § 39.905. The goals consisted of specified reductions—i.e., a slowing—in the anticipated growth in demand for electricity in the service areas of electric utilities. *See id.* § 39.905(a)(3). Since then, CenterPoint has offered energy-efficiency programs designed to meet these goals. In 2007, the legislature amended PURA section 39.905 to establish additional energy-efficiency goals. The amended statute also directed the Commission to adopt rules to establish "an energy efficiency cost recovery factor for ensuring timely and reasonable cost recovery for utility expenditures made to satisfy the goal of this section." *See id.* § 39.905(b)(1). Thus, the purpose of the "cost-recovery factor"—essentially a surcharge on customers' bills—was to facilitate the prompt recovery of "expenditures" made to achieve the goals of section 39.905.

The amended statute further provides:

> The energy efficiency cost recovery factor under Subsection (b)(1) may not result in an over-recovery of costs but may be adjusted each year to change rates to enable utilities to match revenues against energy efficiency costs and any incentives to which they are granted. The factor shall be adjusted to reflect any over-collection or under-collection of energy efficiency cost recovery revenues in previous years.

*Id*. § 39.905(b-1). Thus, this provision establishes an annual "true-up" procedure so that revenues produced by the "energy efficiency cost recovery factor" ("EECRF") stay reasonably close to the

2

actual energy efficiency costs. In response to this legislation, in 2008 the Commission replaced its existing energy-efficiency rule with an amended rule that added provisions establishing the newly mandated EECRF. *See* 33 Tex. Reg. 3622 (2008) (former 16 Tex. Admin. Code § 25.181). As amended in 2008, rule 25.181 stated that a utility must establish an EECRF that "complies with this section to timely recover the reasonable costs of providing energy efficiency programs pursuant to this section." 16 Tex. Admin. Code § 25.181(f)(6).

In 2010, the Commission commenced a rulemaking proceeding, Project No. 37623, to again amend rule 25.181. In that proceeding, the Commission proposed amendments to the rule that would establish energy-efficiency goals for 2012 and 2013, add a cost cap, update the rule's cost-effectiveness standard, and modify calculation of the rule's performance bonus for utilities exceeding the stated energy-efficiency goals. The Commission also sought comments on whether it should adopt an LRAM that would provide a method for utilities to recover, through the EECRF, any *revenues* that could be shown to have been lost as a result of implementing the mandated energy efficiency programs. Numerous interested entities provided comments both for and against including an LRAM in rule 25.181. CenterPoint supported adoption of an LRAM, maintaining that, pursuant to PURA section 39.905, the Commission "clearly has the authority" to do so and that an LRAM "is a better solution than the filing of a costly base rate case—the utility's only other method of addressing an inability to adjust rates." In its Order in Project No. 37623, the Commission ultimately declined to include an LRAM provision in rule 25.181, stating that its decision was consistent with the conclusion it had reached in an earlier proceeding that "lost revenues" are not "energy-efficiency

3

costs" that could be recovered through an EECRF under PURA section 39.905.[2] CenterPoint filed this direct appeal challenging the validity of rule 25.181. *See* Tex. Util. Code Ann. § 39.001(f) (West 2007).

## DISCUSSION

This proceeding is a direct challenge to the validity of a chapter 39 "competition rule." *See id.* § 39.001(e). A validity challenge tests a rule on procedural and constitutional grounds. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 104 S.W.3d 225, 232 (Tex. App.—Austin 2003, no pet.). The scope of a validity challenge also includes whether the agency had statutory authority to promulgate the rule. *City of Alvin v. Public Util. Comm'n*, 143 S.W.3d 872, 878 (Tex. App.—Austin 2004, no pet.). We presume that an agency rule is valid, and the party challenging the rule has the burden of demonstrating its invalidity. *See McCarty v. Texas Parks & Wildlife Dep't*, 919 S.W.2d 853, 854 (Tex. App.—Austin 2004, no pet.). An agency's rules must comport with the agency's authorizing statute. *See Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied). To establish a rule's facial invalidity, the challenger must show that the rule (1) contravenes specific statutory language; (2) is counter to the statute's general objectives; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See id.* (citing *Office of Pub. Util. Counsel*, 104 S.W.3d at 232).

---

[2] The earlier proceeding had addressed—and rejected—CenterPoint's application for approval of an EECRF that would allow it to recover $1,436,550 of revenue losses it claimed were attributable to its 2009 energy-efficiency programs.

4

CenterPoint contends that PURA section 39.905 requires that the Commission include a provision for an LRAM in rule 25.181 and that its failure to do so contravenes the statute and renders the rule invalid. CenterPoint argues that when the legislature enacted PURA section 39.905(b-1) and directed the Commission to establish an EECRF to "enable utilities to match revenues against energy efficiency costs and any incentives to which they are granted," it divested the Commission of any discretion to decline to adopt an LRAM "as part of its efforts to enable utilities to meet the legislature's energy efficiency goals." *See* Tex. Util. Code Ann. § 39.905(b-1). The Commission counters that section 39.905 authorizes only compensation for a utility's *expenditures* associated with energy-efficiency programs, not for any *revenues* lost as a result of implementing those programs. The dispute, therefore, turns principally on the construction of a statute, a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).

Our primary objective in construing statutes is to give effect to the legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or unless the plain meaning would lead to absurd or nonsensical results that the legislature could not have intended. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We look to the entire act in determining the legislature's intent with respect to a specific provision. *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet.

denied). When a statute is ambiguous, we are required to give "serious consideration" to the construction of the statute by the administrative agency charged with its enforcement, *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011), and uphold the agency's interpretation if it is reasonable, *First Am. Title Ins. Co.*, 258 S.W.3d at 632 (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). We do not defer to an agency interpretation when a statute is unambiguous. *See Texas Citizens*, 336 S.W.3d at 624 & n.6. We also "'do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or [which] deal with a nontechnical question of law.'" *Rylander v. Fisher Controls Int'l Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (quoting 2B Singer, *Sutherland Statutory Construction* § 49.04, at 23-24 (6th ed. 2000)).

CenterPoint contends that the plain language of PURA section 39.905 requires the inclusion of an LRAM because the statute mandates that a utility be compensated for revenues lost as a result of its energy-efficiency programs. CenterPoint's position depends on construing the term "costs" as used in PURA section 39.905 to include such lost revenues. CenterPoint asserts that the plain meaning of the term "includes the losses or sacrifices sustained as a result of an endeavor." Considered in context, however, we do not believe the statute permits such a broad reading of the term "costs." *See Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex. 2002) (courts must consider statute as whole and not words or provisions in isolation). Rather, PURA section 39.905(b)(1) directs the Commission to establish an EECRF "for ensuring timely and reasonable *cost recovery for utility expenditures* made to satisfy the goal of this section." Tex. Util. Code Ann. § 39.905(b)(1) (emphasis added). The statute thus provides that the "costs" the

6

legislature intended for a utility to recover through the EECRF are its "expenditures" associated with its attempts to comply with the energy-efficiency mandate. *See id.* The ordinary meaning of the term "expenditure" is: (1) the act or process of paying out; disbursement; (2) a sum paid out. Black's Law Dictionary 658 (9th ed. 2009). In this context, the term "expenditures" does not contemplate lost revenues.

In at least two other provisions of PURA, the legislature expressly distinguishes "costs" from "revenues," indicating that its use of the term "costs" by itself does not encompass lost revenues. For example, PURA section 55.024(b) provides that a telecommunications utility may recover "all costs incurred *and all loss of revenue*" resulting from imposition of charges for providing mandatory two-way extended area service to customers. *See* Tex. Util. Code Ann. § 55.024(b) (West 2007) (emphasis added). In PURA section 56.025(e), the legislature directed the Commission to "implement a mechanism to replace the reasonably projected increase in costs *or decrease in revenue*" caused by a governmental agency's order, rule, or policy. *See id.* § 56.025(e) (West 2007) (emphasis added). These provisions further support our conclusion that the term "costs," as used by the legislature in PURA, is not intended to include lost revenues. The legislature's failure in PURA section 39.905 to specifically provide for recovery of "lost revenues," in addition to "costs," indicates that it intended for the EECRF to serve as a mechanism for a utility to recover out-of-pocket expenditures associated with its implementation of energy-efficiency programs, not to compensate a utility for any associated lost revenues attributable to those programs.

CenterPoint asserts that this interpretation of the term "costs" is inconsistent with PURA section 39.905(b-1), which provides that the EECRF may be adjusted each year to "enable

7

utilities to match revenues against energy efficiency costs and any incentives to which they are granted." *See id.* § 39.905(b-1). CenterPoint interprets the term "revenues" to means revenues from its overall operations and contends that the EECRF is designed to match the utility's actual revenues with the total revenues it would have earned absent the energy-efficiency programs. We do not believe this is a reasonable interpretation of the relevant provisions. The second sentence of PURA section 39.905 (b-1) states: "The [cost-recovery] factor shall be adjusted to reflect any over-collection or under-collection of *energy efficiency cost recovery revenues* in previous years." *Id.* (emphasis added). From the context, it is clear that the matching contemplated by the statute is between the actual revenues the utility collects *through its EECRF*—i.e., energy efficiency cost recovery revenues—and the expenditures made by the utility for the energy efficiency program—i.e., energy efficiency costs. The matching is not intended to address any lost revenues attributable to a general decrease in energy consumption resulting from energy-efficiency programs. Rather, the purpose of this provision is to ensure that a utility neither over-recovers nor under-recovers its actual energy-efficiency program expenditures.

CenterPoint also argues that the Commission's failure to include an LRAM in rule 25.181 renders the rule invalid because it runs counter to a legislative mandate contained in PURA section 39.905(b)(4), which requires that the Commission ensure that "the costs associated with [energy-efficiency] programs provided under [section 39.905] are borne by the customer classes that receive the services under the programs." *See id.* § 39.905(b)(4). Again, this argument depends on interpreting the term "costs" in this section to include lost revenues. However, there is nothing in the statute to indicate that the term "costs" in this section should be read more expansively than in

8

section (b)(1). *See Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 690 (Tex. App.—Austin 2005, pet. denied) (when same or similar term is used in same connection in different statutes, term will be given same meaning in one as in other, unless there is something to indicate that different meaning was intended). We hold that the term "costs" in both 39.905(b)(1) and (b)(4) means a utility's actual expenditures associated with its energy-efficiency programs. These costs can be recovered from a utility's customers through application of an EECRF that does not include an LRAM.

We conclude that the text of the statute is clear and unambiguous and evidences the legislature's intent that the Commission ensure that a utility recovers only its energy-efficiency program expenditures through an EECRF. The EECRF is not intended to be used as a mechanism to compensate a utility for any lost revenues that may result from implementation of these programs. CenterPoint's first appellate issue is overruled.

In its second issue, CenterPoint contends that rule 25.181 is invalid because the Commission's failure to include an LRAM resulted from an erroneous interpretation of its authority under PURA section 39.905. However, an agency has only the authority expressly provided by statute or necessarily implied to carry out the powers the legislature has given it. *See Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315-16 (Tex. 2001); *Public Util. Comm'n v. GTE-Southwest*, 901 S.W.2d 401, 407 (Tex. 1995). As we have held above, PURA section 39.905 authorizes the Commission to allow utilities to recover their energy-efficiency program expenditures; it does not authorize the Commission to adopt a rule or procedure that allows utilities to use an EECRF to charge customers for any claimed "lost revenues" resulting from the energy-efficiency programs they are required to implement. The Commission properly exercised its authority

9

under PURA section 39.905 and correctly concluded that including an LRAM in rule 25.181 would contravene the statute and exceed its statutory authority. We overrule CenterPoint's second appellate issue.

## CONCLUSION

Because PURA section 39.905 does not permit, much less require, the Commission to adopt a lost-revenue adjustment mechanism as part of the authorized energy efficiency cost recovery factor, we overrule CenterPoint's two appellate issues challenging the validity of rule 25.181, find the rule be valid, and affirm it as enacted.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: November 10, 2011