ACCEPTED
14-14-00617-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/2/2015 12:49:41 PM
CHRISTOPHER PRINE
CLERK



July 2, 2015

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

7/2/2015 12:49:41 PM

CHRISTOPHER A. PRINE
Clerk

Honorable 14th Court of Appeals
301 Fannin, Room 245
Houston, Texas 77002

RE: No. 14-14-00617-CV; Sands L. Stiefer, Chief Appraiser of the Harris County Appraisal District v. Edward Moers and Daniel Moers; In the Court of Appeals for the 14th District of Texas, Houston, Texas

To the Honorable 14th Court of Appeals:

The undersigned would like to inform the Court that an opinion has been issued in No. 01-13-00549-CV; in the First Court of Appeals. This case involved the same parties and similar issues. I have attached a copy for your convenience.

Respectfully submitted,

**OLSON & OLSON, L.L.P.**

By: /s/ Eric C. Farrar
Eric C. Farrar
State Bar No. 24036549
EFarrar@olsonllp.com
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, TX 77019
Telephone: (713) 533-3800
Telecopy: (713) 533-3888

ATTORNEYS FOR APPELLEES

HARRIS COUNTY APPRAISAL
DISTRICT AND CHIEF APPRAISER JIM
ROBINSON

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2015, a true and correct copy of the foregoing letter was electronically served to the following:

Mr. G. Scott Williams
1770 St. James Place, Suite 300
Houston, Texas 77056

Gene Gundersen
Harris County Attorney's Office
1019 Congress
15th Floor
Houston, Texas 77002

Hon. Mike Engelhart
151st Civil Court Judge
Harris County Civil Courthouse
201 Caroline, 11th Floor
Houston, Texas 77002

I hereby certify that on July 2, 2015, a true and correct copy of the foregoing letter was served via regular mail and facsimile to the following:

Edward Moers, Pro Se
18715 K-Z Road
Cypress, Texas 77433
Facsimile:  (281) 351-6127

Daniel Moers, Pro Se
18338 Mueschke Road
Cypress, Texas 77433

/s/ Eric C. Farrar
Eric C. Farrar

**Opinion issued June 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00549-CV

————————————

**EDWARD MOERS AND DANIEL MOERS, Appellants**

**V.**

**HARRIS COUNTY APPRAISAL DISTRICT, CHIEF APPRAISER OF HARRIS COUNTY APPRAISAL, JIM ROBINSON, AND HARRIS COUNTY APPRAISAL REVIEW BOARD, Appellees**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2009-55877**

---

## O P I N I O N

This is an appeal from the Harris County Appraisal District's ("HCAD") denial for tax years 2010–2012 of Edward and Daniel Moers's request for an open-space land appraisal for land the Moerses used in their organic sheep-raising

operation. The Moerses sued HCAD, the Harris County Appraisal Review Board ("HCARB"), and the Harris County Chief Appraiser, Jim Robinson, arguing that the eligibility requirements for an open-space land appraisal adopted by HCAD's Chief Appraiser are invalid. The trial court dismissed HCARB and the Chief Appraiser and granted HCAD's motion for final summary judgment. We modify the trial court's dismissal of the claims for tax year 2012 to dismiss the claims without prejudice and affirm as modified.

## Background

In 2009, the Moerses began a sheep-raising operation on two non-contiguous tracts of land. In years 2010–2012, the Moerses sought to have the two tracts appraised as "open-space land." The open-space land appraisal status would have allowed the Moerses' land to be valued based on its productive capacity for raising sheep, rather than its market value, which would have resulted in a lower tax liability for those years. HCAD denied the applications for each year, and the Moerses protested to HCARB, which also denied the applications.

The Moerses sued HCAD, HCAD's Chief Appraiser, Jim Robinson, and HCARB, challenging the denial of their open-space land applications for 2010–2012. They also requested a declaratory judgment invalidating the degree of intensity standards ("Standards") governing HCAD's determination that the Moerses were ineligible for an open-space land appraisal on the basis that the

2

Chief Appraiser lacked the authority to adopt the Standards. They sought an injunction "precluding the Chief Appraiser from enforcing" the Standards and prohibiting HCAD from collecting taxes on their tracts until the Chief Appraiser complied with the Tax Code. They also alleged that Daniel had been denied due process because HCARB refused to hold a hearing on his protest of the denial of his open-space land application for tax year 2010.

The trial court granted the Chief Appraiser's plea to the jurisdiction,[1] dismissing the declaratory judgment, *ultra vires*, and injunctive relief claims against the Chief Appraiser for lack of jurisdiction. It also dismissed HCAD's plea to the jurisdiction concerning the Moerses' claims against HCAD for 2012 with prejudice for failure to exhaust administrative remedies.

HCAD then moved for final summary judgment, contending that the Moerses were ineligible for open-space land appraisal status. Specifically, HCAD argued that it was entitled to summary judgment because it conclusively proved that the Moerses could not meet the "degree of intensity" necessary to qualify for open-space land appraisal.

In response to HCAD's motion for final summary judgment, the Moerses contended that the Standards adopted by the Chief Appraiser for determining open-

---

[1] The Chief Appraiser and HCAD filed a "Motion to Dismiss for Lack of Subject-Matter Jurisdiction," which contained two separate pleas to the jurisdiction concerning the Chief Appraiser and HCAD.

3

space land appraisal were invalid. The Moerses also filed a motion for partial summary judgment as to the open-space land appraisal.

The trial court denied the Moerses' motion for partial summary judgment and granted HCAD's motion for final summary judgment. It ordered that the Moerses "take nothing" for their claims for tax years 2010 and 2011 and assessed costs against the Moerses.

## Discussion

In six issues, the Moerses contend that the trial court erred in (1) granting HCAD's motion for summary judgment, (2) denying their motion for partial summary judgment, (3) dismissing their claims against the Chief Appraiser, (4) entering a final judgment, (5) dismissing all claims for tax year 2012 with prejudice, and (6) ordering Daniel to pay court costs.

### A.    Summary Judgment

In their first and second issues, the Moerses contend that the trial court erred in granting HCAD's motion for summary judgment and in denying their motion for partial summary judgment.

#### 1.    Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold

4

the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).

In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). If the defendant conclusively negates at least one element of a cause of action, the burden shifts to the plaintiff to raise a fact issue to preclude summary judgment. *See Parker v. Dodge*, 98 S.W.3d 297, 299, (Tex. App.—Houston [1st Dist.] 2003, no pet.).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and "render the

5

judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### 2. Open-space land appraisal law

The Texas Constitution and the Texas Tax Code contain provisions to promote the preservation of open-space land devoted to farm or ranch purposes. *See* TEX. CONST. art. VIII, § 1–d–1; TEX. TAX CODE ANN. §§ 23.51–.54 (West 2015). Accordingly, the Legislature provided for special appraisals for "qualified open-space land." TEX. TAX CODE ANN. § 23.52 (West 2015). "The open-space land appraisal allows property used for farm or ranch purposes to be valued based upon the property's productive capacity rather than its market value." *Parker Cnty. Appraisal Dist. v. Francis*, 436 S.W.3d 845, 849 (Tex. App.—Fort Worth 2014, no pet.) (citing *HL Farm Corp. v. Self*, 877 S.W.2d 288, 292 (Tex. 1994)).

To qualify for the open-space land appraisal, the property owner must demonstrate that the land (1) is currently being devoted principally to agricultural use (2) to the degree of intensity generally accepted in the area, and (3) has been devoted principally to agricultural use or to production of timber or forests for five of the preceding seven years. TEX. TAX CODE ANN. § 23.51(1).

Chief Appraisers have been given the authority to determine applications for open-space land appraisal. *See* TEX. TAX CODE ANN. § 23.57(a), (c) (West 2015).

6

However the authority to establish the eligibility standards was delegated by the Legislature to the Texas Comptroller of Public Accounts:

> The comptroller by rule shall develop and distribute to each appraisal office appraisal manuals setting forth this method of appraising qualified open-space land, and each appraisal office shall use the appraisal manuals in appraising qualified open-space land. The comptroller by rule shall develop and the appraisal office shall enforce procedures to verify that land meets the conditions contained in Subdivision (1) of Section 23.51 of this code . . . .

TEX. TAX CODE ANN. § 23.52(d). Considering these statutes together, both the Chief Appraisers and the Comptroller play important roles in the open-space land appraisal process. The Moerses do not challenge the validity of the authorization of Chief Appraisers to determine open-space land appraisals, nor do they challenge the delegation of authority to the Comptroller to set forth the method of appraisal.

The Comptroller created the Manual for the Appraisal of Agricultural Land ("the Manual"). *See* 34 TEX. ADMIN. CODE § 9.4001 (1990) (State Property Board adopted Manual); *Parker Cnty. Appraisal Dist.*, 436 S.W.3d at 853 n.6 (noting that Office of State Comptroller assumed duties and responsibilities of state taxation in 1991); *see also* Tex. State Comptroller of Pub. Accounts, *Guidelines for the Appraisal of Agricultural Land* (April 1990), http://comptroller.texas.gov/taxinfo/ proptax/agland/part1.pdf (containing entire Manual). "The Manual, promulgated by rule, has the force and effect of law." *Pizzitola v. Galveston Cnty. Cent. Appraisal Dist.*, 808 S.W.2d 244, 248 (Tex. App.—Houston [1st Dist.] 1991, no

7

writ) (citing *Gen. Elec. Credit Corp. v. Small*, 584 S.W.2d 690, 694 (Tex. 1979)).

Courts have approved appraisal districts' reliance on the Manual, in some cases

noting that it is entitled to great deference. *See, e.g.*, *Compass Bank v. Bent Creek*

*Invs., Inc.*, 52 S.W.3d 419, 421 (Tex. App.—Fort Worth 2001, no pet.); *Resolution*

*Trust Corp. v. Tarrant Cnty. Appraisal Dist.*, 926 S.W.2d 797, 799 (Tex. App.—

Fort Worth 1996, no writ); *Walker v. Appraisal Review Bd. for Guadalupe Cnty.*

*Appraisal Dist.*, 846 S.W.2d 14, 16 (Tex. App.—San Antonio 1992, writ denied);

*Pizzitola*, 808 S.W.2d at 248.

The Manual requires that the land for which a property owner seeks open-

space land appraisal "be used for an agricultural purpose to the degree of intensity

typical in the area." Tex. State Comptroller of Pub. Accounts*, Qualification of*

*Land Under Section 1-d-1* (April 1990), at 9, http://comptroller.texas.gov

/taxinfo/proptax/agland/part2.pdf; *see also* TEX. TAX CODE ANN. § 23.51(1). This

"degree of intensity test measures whether the land is being farmed or ranged to

the extent typical for agricultural operations." Tex. State Comptroller of Pub.

Accounts, *Qualification of Land Under Section 1-d-1*, at 9. The Manual mandates

that the Chief Appraiser determines "land use and degree of intensity Standards for

qualifying land" and "set Standards according to local agricultural practices." Tex.

State Comptroller of Pub. Accounts, *Manual for the Appraisal of Agricultural*

*Land* (April 1990), at 3, http://comptroller.texas.gov/taxinfo/proptax /agland/part1.pdf. It states:

> The law does not state what degree of intensity qualifies a particular type of land. The chief appraiser must set the standards according to local agricultural practices. Because of the variety of soil types, climate conditions, and crops in a state as large as Texas, no single statutory definition could cover all possible uses.

Tex. State Comptroller of Pub. Accounts, *Qualification of Land Under Section 1-d-1*, at 9. The Manual also mandates that the Chief Appraiser's "decision on what constitutes an 'area' will define 'typical' agricultural intensity." *Id.* The Manual contemplates that a Chief Appraiser's determination of the typical area for a particular agricultural practice is not confined to a county's typical agricultural intensity:

> The size of the area can vary with the commodity. For a common crop, the chief appraiser may be able to look to farming practices within the county. Rarer crops may require the chief appraiser to consider a multi-county region to decide the typical agricultural inputs.

*Id.*

The degree of intensity Standards for open-space land in Harris County adopted by the Chief Appraiser provide that for the production of livestock, "improved pasture" land must be a minimum of seven acres and "[p]roduce sufficient forage to sustain a minimum of 4 animal units." *See* Harris Cnty. Appraisal Dist., *Tax Savings on Land Used for Agriculture & Wildlife*

*Conservation*, http://www.hcad.org/Help/Process/AG.asp#Intensity (last visited June 26, 2015). The Standards define an animal unit as "any domestic animal or combination of animals with a forage dry matter (DM) requirement of 27 lb/day," and specifically provides that "6 sheep" is an animal unit. *Id.*

### 3. Did HCAD conclusively negate an element of the Moerses' open-space land appraisal claim?

To be eligible for open-space land appraisal, the Moerses had to establish that (1) their land was "currently devoted principally to agricultural use," (2) the agricultural use was "to the degree of intensity generally accepted in the area," and (3) their land "has been devoted principally to agricultural use or to production of timber or forest products for five of the preceding seven years." *See* TEX. TAX CODE ANN. § 23.51(1). HCAD moved for summary judgment on the basis that the Moerses could not establish the degree of intensity required to qualify for the open-space land appraisal.

Under the degree of intensity Standards adopted by the Harris County Chief Appraiser, a livestock operation raising sheep on improved pasture in Harris County must include seven acres and produce sufficient forage to support four animal units—approximately 24 sheep. *See* Harris Cnty. Appraisal Dist., *Tax Savings on Land Used for Agriculture & Wildlife Conservation*. HCAD's summary-judgment evidence included the Standards and the affidavits of two HCAD employees, Gary Underwood and Brian White. Underwood averred that

10

the Moerses "have never had the required twenty-four (24) sheep on each of their properties." White averred he "personally inspected both Edward Moers' and Daniel Moers' properties" and he has "never seen twenty-four (24) or more sheep present on each of the subject properties. Sometimes there were no sheep at all, sometimes there were sheep but there were always less than twenty-four (24)."

The Moerses did not adduce evidence that they ever had the requisite 24 sheep on their land. Rather, in their response to HCAD's motion for summary judgment and in their cross motion, the Moerses argued that the Harris County Chief Appraiser lacked authority to create the degree of intensity Standards and that the Standards are invalid. In support, they adduced evidence that purportedly demonstrates that HCAD should use different degree of intensity Standards. We conclude that this is insufficient to raise a fact issue on HCAD's motion or to demonstrate entitlement to summary judgment on the Moerses' cross motion.

As a preliminary matter, we note that the Chief Appraiser has the authority to create the degree of intensity Standards. The Tax Code expressly grants the Chief Appraiser the authority to determine applications for open-space land appraisal. *See* TEX. TAX CODE ANN. § 23.57(a), (c). In addition to that legislative grant of authority, the Tax Code grants the Comptroller the authority to create the Manual, and the Manual defers to each appraisal district's Chief Appraiser the creation of the degree of intensity Standards for its county. *See* TEX. TAX CODE

11

ANN. § 23.52(d); Tex. State Comptroller of Pub. Accounts, *Qualification of Land Under Section 1-d-1*, at 9.

Courts recognize rules contained in the Manual as agency rules. *See, e.g.*, *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (recognizing Manual's rule as agency rule); *Bexar Appraisal Dist. v. Sivage Invs., Ltd.*, Nos. 04-14-00227-CV, 04-14-00228-CV, 04-14-00229-CV, 04-14-00230-CV, 2014 WL 6475369, at *2 (Tex. App.—San Antonio Nov. 19, 2014, no pet.) (same). And agency rules carry a presumption of validity. *CenterPoint Energy Houston Elec., LLC v. Pub. Util. Comm'n*, 354 S.W.3d 899, 902 (Tex. App.—Austin 2011, no pet.); *TXU Generation Co., L.P. v. Pub. Util. Comm'n of Tex.*, 165 S.W.3d 821, 829 (Tex. App.—Austin 2005, pet. denied) (same). We defer to a rule promulgated by an agency as long as it is reasonable and does not contradict the plain meaning of the statute. *See CenterPoint*, 354 S.W.3d at 902–04; *DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 420 (Tex. App.—Austin 2006, pet. denied).

"An agency's rules must comport with the agency's authorizing statute, but the legislature does not need to include every specific detail or anticipate all unforeseen circumstances." *State, Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied) (citing *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex.

1992)).  Likewise, "[i]n ascertaining the scope of an agency's authority, we give great weight to the agency's own construction of a statute."  *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007).

Similarly, when we review a challenge to a rule promulgated by a Chief Appraiser who has legislative authority to determine applications for open-space land appraisal, we are limited to evaluating whether the Chief Appraiser acted contrary to the authorizing statute.  *See State, Office of Pub. Util. Counsel*, 131 S.W.3d at 331.  "To establish the rule's facial invalidity, a challenger must show that the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions."  *Id.*

The Moerses complain that the Chief Appraiser's implementation of the degree of intensity Standards inappropriately imposes a minimum size of land requirement and minimum number of animal requirement.  But the statutory definition of open-space land appraisal references the concept of the degree of intensity generally accepted in the area and does address whether a minimum amount of land and animals could be necessary to achieve the degree of intensity generally accepted in the area.  *See* TEX. TAX CODE ANN. § 23.51 (to qualify for open-space land appraisal, property owner must demonstrate land is currently devoted principally to agricultural use "to the degree of intensity generally

accepted in the area"). Therefore, the fact that the Chief Appraiser has identified those criteria is not in conflict with the general legislative scheme.

Rather, the Chief Appraiser implemented this tax scheme in exercise of the statutory authority to determine applications for open-space land appraisal, TEX. TAX CODE ANN. § 23.57(a), (c), acting within the bounds of guidance promulgated by the Comptroller. Tex. State Comptroller of Pub. Accounts, *Qualification of Land Under Section 1-d-1*, at 9 (Manual permits Chief Appraiser to set degree of intensity Standards). We thus conclude that nothing on the face of the Standards violates or is in conflict with the legislative scheme. *See State, Office of Pub. Util. Counsel*, 131 S.W.3d at 331 (holding that to establish agency rule is invalid, must show that it contravenes statutory language, runs counter to statute's general objectives, or imposes additional or inconsistent conditions).

In response to HCAD's motion to summary judgment,[2] the Moerses also argued that the Chief Appraiser's degree of intensity Standards are not generally

---

[2] The Moerses contend that their response to HCAD's motion for summary judgment raised at least three material fact issues precluding summary judgment: (1)"What is the degree of intensity generally accepted in Harris County relating to the production of organic sheep?"; (2) "How were HCAD's degree of intensity Standards determined and are such Standards in accordance with the requirements for achieving [open-space land] agricultural appraisal as set forth in the Texas Constitution and the Texas Property Tax Code?"; and (3) "Are the properties owned by [the Moerses] qualified open-space land in 2010 and/or 2011 in that each was currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and had been devoted principally to agricultural use for the past seven years?"

14

accepted in Harris County and that the average farm in Harris County has a significantly lower stocking rate.

The Moerses' summary-judgment evidence, at most, supports an argument that the Chief Appraiser should adopt and apply different degree of intensity Standards. All of the Moerses' arguments and evidence presented to suggest that the Chief Appraiser's degree of intensity Standards were arbitrary and had no factual basis are all premised on the idea that the "degree of intensity generally accepted in the area" has to be determined by referring to Harris County. But the Tax Code and Manual do not require that the Chief Appraiser create Standards in accordance with the degree of intensity generally accepted in Harris County. Rather, the Manual expressly states that the Chief Appraiser may need to consider a larger region to decide the degree of intensity requirement for particular agricultural practices. Tex. State Comptroller of Pub. Accounts, *Qualification of Land Under Section 1-d-1*, at 9 (Chief Appraiser may need to "consider a multi-county region to decide the typical agricultural inputs"). Therefore, the Moerses have failed to raise a fact issue as to whether the Standards contravene the Tax Code or Manual, run counter to the general objectives of the statutes or Manual, or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions because they adduced no evidence and pointed to no authority requiring that the Standards must equate to typical

15

agricultural practices in Harris County. Accordingly, the Moerses have not raised a fact issue regarding whether the Standards are invalid.

The Moerses next contend that the Standards should not apply from 2010–2012 because they fall within a statutory exception to their application. Section 23.522 of the Tax Code states:

> The eligibility of land for appraisal under this subchapter does not end because the land ceases to be devoted principally to agricultural use to the degree of intensity generally accepted in the area if:
>
> (1) a drought declared by the governor creates an agricultural necessity to extend the normal time the land remains out of agricultural production; and
>
> (2) the owner intends to use the land in that manner and to that degree of intensity [when the drought ends].

TEX. TAX CODE ANN. § 23.522 (West 2015).

The Moerses adduced evidence that former Governor Perry proclaimed drought from 2009–2012. But the Moerses proffered no evidence demonstrating that the drought "create[d]" the "necessity to extend the normal time the land remains out of agricultural production." *See* TEX. TAX CODE ANN. § 23.522(1). Nor is there evidence that the land "ceased" to be devoted principally to agricultural use—to the required degree of intensity Standards. There is no evidence here that the Moerses ever met the degree of intensity Standards. Based on the summary-judgment record, we conclude that the Moerses failed to raise a

16

fact issue as to whether the Standards were inapplicable because of drought proclamations.

Having concluded that the Moerses failed to demonstrate that the Standards are invalid or raise a fact issue as to whether they satisfied the degree of intensity requirement, we hold that the trial court properly granted HCAD's motion for final summary judgment and denied the Moerses' motion for partial summary judgment regarding the Moerses' eligibility for open-space land appraisal for the years 2010– 2012. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam) (holding that claimant moving for summary judgment on its claim must conclusively prove all essential elements of claim and that claimant has burden to show that there are no genuine issues of material fact and that claimant is entitled to judgment as a matter of law).

We overrule the Moerses' first and second issues.

## B. The trial court properly dismissed all claims against the Chief Appraiser

In their third issue, the Moerses contend that the trial court erred in dismissing their *ultra vires* claims against the Chief Appraiser for lack of subject-matter jurisdiction.

An *ultra vires* claim is "'an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority . . . .'" *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009) (quoting

*Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)). To fall within the *ultra vires* exception to sovereign immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372 (citations omitted).

The Moerses alleged that the Chief Appraiser acted *ultra vires* by failing to (1) set the degree of intensity requirement "according to local agricultural practices" and in accordance with the Manual, (2) timely resolve their applications, and (3) follow other provisions of the Tax Code.

First, the Moerses' claims that the Chief Appraiser failed to "set the degree of intensity according to local agricultural practices" and adopt proper appraisal Standards in accordance with various sections of the Manual amounts to claims that the Chief Appraiser "got it wrong." *See MHCB (USA) Leasing & Fin. Corp. v. Galveston Cent. Appraisal Dist. Review Bd.*, 249 S.W.3d 68, 80–81 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[J]ust because an agency determination is wrongly decided does not render that decision outside the agency's authority . . . an incorrect agency determination rendered *pursuant* to the agency's authority is not a determination made outside that authority.") (emphasis in original); *Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 430 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (Appellant "does not challenge

the fact that the Fund has . . . this statutory authority. Regardless of his phrasing it in terms of 'authority' . . . the crux of [appellant's] argument is that the trustees interpreted the statute in a way they should not have. This is a complaint of 'getting it wrong,' not of acting outside statutory authority."). Complaints that the official "reached an incorrect or wrong result when exercising its delegated authority" is not sufficient to state an *ultra vires* claim of exceeding statutory authority. *Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Env't Quality*, 307 S.W.3d 505, 517–18 (Tex. App.—Austin 2010, no pet.); *see Williams*, 121 S.W.3d at 430.

Second, the Moerses' allegations regarding timeliness are also insufficient to state an *ultra vires* claim. Allegations of a failure to comply with every applicable administrative procedure do not state an *ultra vires* claim. *See Appraisal Review Bd. of Harris Cnty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 419 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("[F]ailure to perfectly comply with all of the intricacies of the administrative process [does not] necessarily constitute extra-judicial action by an agency.").

Third, the Moerses' allegations that the Chief Appraiser failed to follow various sections of the Tax Code are also insufficient to state an *ultra vires* claim because the Moerses point to several provisions that are unrelated to this case. *See* TEX. TAX CODE ANN. §§ 23.22 (concerns appraisal of land burdened by

19

government-imposed restrictions on use), 23.23 (concerns appraisal of homestead), 23.25 (concerns method of appraising homestead that is contiguous with open-space land), 23.44 (concerns procedures in application to qualify for "agricultural use" appraisal) (West 2015). The Moerses reference only two sections that are related to open-space land appraisal. *See id.* §§ 23.51 (definitions applicable to open-space land qualifications), 23.57 (procedures for Chief Appraiser to follow in application seeking to qualify for open-space land appraisal). But those two sections relate to an allegation that an agency failed to follow all procedural requirements, which does not amount to an *ultra vires* claim. *See O'Connor & Assocs.*, 267 S.W.3d at 419.

Because the Moerses failed to allege an *ultra vires* claim against the Chief Appraiser, we hold that the trial court properly dismissed their claims against the Chief Appraiser.

We overrule the Moerses' third issue.

## C. The summary judgment and plea to the jurisdiction disposed of all claims

In their fourth issue, the Moerses contend that HCAD's motion for final summary judgment did not cover all of their pending claims and, therefore, the trial court granted greater relief than the motion justified by entering a final judgment.

The Moerses specifically argue that HCAD's motion did not address their Declaratory Judgment causes of action contained in paragraphs 13 and 14 of their

20

Eighth Amended Petition. In paragraphs 13 and 14, the Moerses requested a declaratory judgment that "HCAD and/or the Chief Appraiser" had "imposed additional rules in violation of statutory requirements for agricultural appraisal which are neither valid nor enforceable" and attempts to add a "minimum land area" requirement was "inconsistent with the requirements set forth in the Texas Constitution, the Texas Property Code Tax Code, and the Manual." These were their claims:

- "Pursuant to the Uniform Declaratory Judgment Act, Texas Civil Practice & Remedies Code § 37.001 *et seq.*, Plaintiffs request [a] declaratory judgment declaring that Defendant HCAD and/or Defendant Chief Appraiser has imposed additional rules in violation of statutory requirements for agricultural appraisal which are neither valid nor enforceable . . . Specifically, Plaintiffs would show that the attempts by HCAD and/or Chief appraiser to add a 'minimum land area' requirement for property owners to achieve [open-space land] agricultural appraisal is beyond, as well as inconsistent with, the requirements set forth in the Texas Constitution, the Texas Property Tax Code, and the Texas Property Tax Manual for the Appraisal of Agricultural Land . . . HCAD and/or Chief Appraiser have improperly set an arbitrary size of land as an element that must be met by a property owner to meet the degree of intensity test required for [open-space land] agricultural appraisal."

- "Defendants HCAD and Chief Appraiser have wrongfully added an element to achieve [open-space land] agricultural appraisal that is beyond, as well as inconsistent with, the requirements set forth in the Texas Constitution, the Texas Property Code, and the Manual for Appraisal of Agricultural Land. Plaintiffs respectfully request . . . a declaratory judgment declaring that Defendant HCAD's and/or Defendant Chief Appraiser's imposition of an arbitrary 'minimum land area' requirement to achieve [open-space land] agricultural appraisal is invalid and unenforceable . . . ."

21

Although the Moerses assert these allegations against "HCAD and/or the Chief Appraiser," only the Chief Appraiser has authority to develop and adopt the Standards. Tex. State Comptroller of Pub. Accounts, *Qualification of Land Under Section 1-d-1*, at 9. Therefore, the Moerses cannot assert such a claim against HCAD. Having concluded that all claims against the Chief Appraiser were properly dismissed by the plea to the jurisdiction, we conclude that the trial court dismissed the Moerses' claims related to the requested declaratory judgment.

We overrule the Moerses' fourth issue.

## D. The trial court erred in dismissing the Moerses' 2012 claims with prejudice

In their fifth issue, the Moerses contend that the trial court erred by dismissing each of their claims for tax year 2012 with prejudice. HCAD agrees that the trial court should not have dismissed these claims for tax year 2012 with prejudice.

In its plea to the jurisdiction, HCAD moved to dismiss the Moerses' claims for tax year 2012 for lack of subject-matter jurisdiction on the grounds that they failed to exhaust administrative remedies for that year. The trial court dismissed all of the Moerses' claims for tax year 2012 with prejudice. But dismissal for failure to exhaust all administrative remedies "does not implicate the claims' merits, [and] the trial court must dismiss [such] claims without prejudice." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). We

22

thus conclude that the trial court erred by dismissing the claims with prejudice and modify the trial court's judgment to reflect that the 2012 claims were dismissed without prejudice. *See* TEX. R. APP. P. 43.2(b) (court of appeals may modify trial court's judgment and affirm it as modified).

We sustain the Moerses' fifth issue.

## E. The trial court did not abuse its discretion in assessing costs against Daniel

In their sixth issue, the Moerses contend that the trial court abused its discretion by assessing costs against Daniel.

Texas Rule of Civil Procedure 131 provides that the "successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. But the Tax Code includes a more specific provision regarding costs in a suit over an appraisal review board's denial of a hearing: "[a] property owner who has been denied a hearing to which the property owner is entitled may bring suit against the appraisal review board . . . [i]f the property owner is entitled to the hearing, the court shall order the hearing to be held and may award court costs . . . ." TEX. TAX CODE ANN. § 41.45(f) (West 2015). A trial court thus has discretion in awarding costs when a party prevails on a claim relating to the entitlement to a hearing with the appraisal review board. *See* TEX. GOV'T CODE ANN. § 311.026(a) (West 2015) (providing that specific provision controls over general provision).

According to Daniel, the trial court should not have assessed costs against him because he prevailed on his claim to obtain a protest hearing with HCARB for 2012, and the record makes no mention of good cause justifying an award of costs against him. But it was within the trial court's discretion to not award Daniel costs. *See* TEX. TAX CODE ANN. § 41.45(f) ("If the property owner is entitled to the hearing, the court shall order the hearing to be held and *may* award court costs . . . .") (emphasis added). Further, Daniel did not prevail on any of his multiple other claims relating to the open-space land appraisal. Accordingly, we hold that the trial court did not abuse its discretion in assessing costs against Daniel.

We overrule the Moerses' sixth issue.

## Conclusion

We modify the trial court's order dismissing Appellants' claims for tax year 2012 to provide that the dismissal is without prejudice. We affirm the trial court's judgment as modified.

Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.